IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TUTUS, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.: 4:20-cv-4231 |
| | § | |
| JLG INDUSTRIES, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. ECF No. 10. Having considered the parties' arguments and the law, the Court **RECOMMENDS**[1] Defendant's Motion be **GRANTED**.

### I. BACKGROUND

Plaintiff is a Texas corporation that manufactures component parts for dropped object prevention enclosures for walking platforms. ECF No. 6 ¶ 5. Defendant is a Wisconsin corporation that designs, manufactures, and markets access equipment, such as aerial work platforms and telehandlers. *Id.* ¶ 6. In 2014, Forrest Hester, the sole owner of Plaintiff, invented an aerial safety netting system called the "Dropped Object Prevention System" ("DOPS") to be used on mobile elevated work platforms ("MEWP"), including those designed and manufactured by Defendant. *Id.* ¶ 7.

The development and manufacture of MEWPs is guided by a series of standards created by the American National Standards Institute ("ANSI") and Scaffold and Access Industry

---

[1] District Judge Vanessa D. Gilmore referred this case to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) on February 13, 2021. ECF No. 12.

Association ("SAIA"). *Id.* ¶¶ 9-11. Standards A92.20 and A92.22 require any aftermarket product or accessory designed to be used on MEWPs receive written approval from the original equipment manufacturer ("OEM") for use of the aftermarket device with the OEM's equipment. *Id.* ¶¶ 14-15. Plaintiff's DOPS product is an aftermarket accessory intended to be used with equipment manufactured by OEM's such as Defendant JLG. Therefore, potential customers to whom Plaintiff could sell his DOPS are prohibited by safety standards from using Plaintiff's DOPS absent prior written approval from the OEM for the use of DOPS on the OEM's equipment. *Id.* ¶ 15-17. Because the customers' use of DOPS on Defendant's equipment was contingent upon Defendant's approval as the OEM, Plaintiff's sales of DOPS were effectively stymied absent that approval. *Id.* ¶ 17. Plaintiff contends Defendant is the "world's leading designer, manufacturer, and marketer of access equipment (aerial work platforms and telehandlers)." *Id.* ¶ 6.

Starting in August 2016, Plaintiff began communicating with multiple companies interested in purchasing DOPS products and those companies "diligently" sought OEM approval from Defendant. *Id.* ¶¶ 18, 21, 25, 30, 40. According to Plaintiff, Defendant continuously reassured Plaintiff and its prospective customers that Defendant would approve the use of DOPS with its equipment, but then failed to do so. *Id.* ¶¶ 24, 26, 28, 31-32, 34-35. Plaintiff contends that, because Defendant refused to approve DOPS for use with Defendant's products, Plaintiff's prospective customers backed out of negotiations for the purchase of large numbers of DOPS. *Id.* ¶¶ 59, 62-63. Plaintiff alleges also that Defendant spread false rumors around the MEWPs industry about the safety of the DOPS products. *Id.* ¶¶ 69-70.

Plaintiff filed suit against Defendant, bringing causes of action for business disparagement and tortious interference based on Defendant's conduct. Defendant has moved to dismiss all of Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(2) based on this Court's lack of

personal jurisdiction over Defendant, a Wisconsin corporation. Alternatively, Defendant moves to dismiss under Rule 12(b)(3) based on improper venue and under Rule 12(b)(6) for Plaintiff's failure to state a claim upon which relief can be granted.

## II.  PERSONAL JURISDICTION

### A.  Personal Jurisdiction Legal Standards

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Texas' long-arm statute "reaches to the constitutional limits, [thus], the question [the Court] must resolve is whether exercising personal jurisdiction over the defendant offends due process." *Id*.

"The due process clause of the Fourteenth Amendment, as interpreted by the Supreme Court, permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has established 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993) (quotations omitted). Both prongs of the due process test must be met for the Court to exercise jurisdiction over a defendant. *Id*.

A non-resident defendant's minimum contacts may establish either general or specific jurisdiction. Neither party alleges that Defendant's contacts with Texas establish general

3

jurisdiction.[2] However, Plaintiff alleges Defendant's contacts with Texas create specific jurisdiction over Defendant with respect to the claims in this case. ECF No. 13 at 11-13. In order to demonstrate specific jurisdiction, Plaintiff must "show the defendant[']s contacts with Texas 'arise from, or are directly related to, the cause of action [alleged].'" *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2108) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). Furthermore, specific jurisdiction may be found when a foreign defendant purposefully directs its activities at residents of the forum state. *Id.* (quoting *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003)). But, because the existence of specific jurisdiction involves a claim specific inquiry, only conduct that relates to the claim is relevant for jurisdictional purposes. *Id.* (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Religious Tech. Ctr.*, 339 F.3d at 375) (stating that, in a case involving a breach of contract claim, "only those acts which relate to the formation of the contract and the subsequent breach" were relevant). Specific jurisdiction involving intentional torts must be based on intentional conduct by the defendant that creates the necessary contacts with the forum. *Trois*, 882 F.3d at 490 (quoting *Walden v. Fiore*, 571 U.S. 277, 287 (2014)). The "touchstone" of the Court's personal jurisdiction inquiry is "whether the defendant's conduct shows that it reasonably anticipates being haled into" a Texas court. *OpenSpend, Inc. v. Salon Target, Inc.*, A-18-CV-585-LY, 2019 WL 1313468, at *3 (W.D. Tex. Jan. 22, 2019), *adopted by* 2019 WL 1313451 (Feb. 28, 2019) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)).

The party seeking to invoke federal jurisdiction bears the burden of establishing the requisite minimum contacts to support specific jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 469

---

[2] General jurisdiction exists where defendant's contacts with the forum state, although not necessarily related to the litigation, are substantial, continuous, and systematic. *Powell v. Profile Design, LLC*, 838 F. Supp. 2d 535, 539 (S.D. Tex. 2012) (citing *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003)).

4

(5th Cir. 2002) (citations omitted). When the Court does not conduct an evidentiary hearing on the motion to dismiss, the party asserting jurisdiction need only demonstrate a *prima facie* case to meet its burden to establish personal jurisdiction. *Trios*, 882 F.3d. at 488. "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985) (citations omitted).

**B. The Court lacks personal jurisdiction over Defendant in this suit.**

Bearing the above principles in mind, the Court concludes that Plaintiff has not met its burden to show that Defendant has created sufficient minimum contacts with Texas for the Court to exercise specific jurisdiction with respect to either of Plaintiff's claims. The Court begins its claim-specific jurisdictional analysis with Plaintiff's allegations regarding his business disparagement claim. Plaintiff alleges that Defendant

> has been disparaging [Plaintiff] and its [DOPS] product to Sunbelt Rentals, Exxon Mobile, and other actual and/or prospective customers of [Plaintiff], falsely claiming that [Defendant] has conducted extensive safety testing of the [DOPS] product and that such testing allegedly proved the product is unsafe and/or allegedly fails to comply with ANSI standards, OSHA regulations or other law or industry standards. Upon information and belief, some of these disparaging statements were made by Kish S. Rajput, the District Sales Manager at [Defendant] for Houston and Southern Louisiana and conveyed to a United Rentals representative centered around the ExxonMobil Baytown Chemical Expansion Project in Baytown, Texas. [Defendant] also disparaged [Plaintiff] and the [DOPS] product by spreading false rumors around the MEWP's (sic) industry, including, upon information and belief, rumors related to the [DOPS] product to ExxonMobil at the Gulf Coast Growth Ventures construction near Corpus Christi, Texas.

ECF No. 6 ⁋⁋ 51 (emphasis in original removed); see also ⁋⁋ 50, 661, 69 (containing the same allegations) . At best, Plaintiff alleges two contacts with Texas involving intentional, defamatory conduct—disparaging comments made to a United Rentals representative "centered around"

5

ExxonMobil Baytown Chemical Expansion Project in Baytown, Texas; and false rumors "related to" the [DOPS] product to ExxonMobil at the Gulf Coast Grown Ventures Construction near Corpus Christi. *Id*.

Indulging every inference in Plaintiff's favor, he has at best alleged defamatory statements made by representatives of the Defendant to persons, businesses, or projects located in Texas. However, Plaintiff has failed to provide any facts about these contacts which demonstrate Defendant intentionally reaching into Texas or the type of purposeful availment that has been held sufficient to create the required minimum jurisdictional contacts. For example, Plaintiff has failed to provide information demonstrating Defendant *placed* phone calls to Texas and made the defamatory statements in those calls. *Cf. Trois*, 882 F.3d at 491 (distinguishing between initiators of phone calls and recipients of uninitiated, unsolicited phone calls, noting, the former should "reasonably anticipate[] being haled into Texas court as a result of reaching out to Texas via phone in order to garner business and make specific representations."). Plaintiff does not describe whether Defendant's employee/employees placed phone calls to Texas or were simply responding to requests for information from individuals in Texas; he further fails to allege whether the disparaging statements were communicated by telephone, email, or some other method. *See OpenSpend*, 2019 WL 1313468, at *4 (citing *Trois*, 882 F.3d at 488) (finding the plaintiff failed to allege sufficient facts describing the defendant's contacts with Texas where the plaintiff made no allegation as to how the contact occurred—whether by phone, email, social media, or some other means—noting "[a]lthough personal jurisdiction has been found when a defendant makes a phone call to the forum and makes false statements over the phone to a forum resident, Plaintiff has failed to present the court with sufficient facts describing Defendant's contacts with Texas."). Plaintiff's allegations in the First Amended Complaint demonstrate only that allegedly disparaging

statements were made to a United Rentals representative "centered around" a project in Baytown, Texas and rumors "related to" the DOPS product were spread to ExxonMobil's construction project near Corpus Christi, Texas. ECF 6 ¶ 51. Plaintiff's focus on the recipient of the communications fails to provide any details about the Defendant's intentional conduct, the conduct the Court must assess when determining personal jurisdiction. As a result, Plaintiff has not demonstrated that Defendant purposefully directed the statements to Texas or even knew he was speaking to someone in Texas. *See Revell*, 317 F.3d at 475 ("The defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum . . . ."). Thus, Plaintiff has failed to allege sufficient factual details that would demonstrate Defendant engaged in contact with any Texas entity in a way that was "sufficiently purposeful" for the Defendant to reasonably anticipate being haled into court in Texas. As currently alleged, the Defendant's contacts with Texas amount to no more than mere "random, fortuitous, or attenuated" contacts resulting from some sort of interaction with persons allegedly affiliated with a Texas business or project. *See Walden*, 571 U.S. at 286 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."). Plaintiff's First Amended Complaint fails to demonstrate a prima facie case of minimum contacts sufficient to allow for the exercise personal jurisdiction over Defendant with respect to Plaintiff's business disparagement claim.

Analysis of the contacts with Texas relevant to Plaintiff's tortious interference claims yields the same result. Plaintiff alleges it was prepared to enter into contracts with various companies (including some located in Texas) to sell DOPS products but that these sales never took

place because Defendant "improperly refus[ed]" to issue the OEM approval letter. ECF No. 6 ¶¶ 54, 56-59. While Plaintiff identifies many potential customers and contracts in Texas with whom and which he contends Defendant tortiously interfered, he fails to identify any actual intentional conduct by the Defendant which could support specific jurisdiction over the tortious interference claims. *Id*. ¶¶ 54-53 (alleging Plaintiff was "prepared" to enter into contracts with customers but that Defendant "set out on a course of conduct to intentionally interfere" with those contracts "by improperly refusing to issue the OEM approval letter[,]" "marketing and selling a copycat product in Texas and elsewhere[,]" and "verbally disparaging [Plaintiff] and the [DOPS] product by spreading false rumors among the MEWP[]s industry . . . ."). The only allegations of intentional conduct by Defendant occurring in Texas are unrelated to the tortious interference cause of action. For example, Plaintiff alleges that Defendant created and sold a "copycat" DOPS product in Texas, but Plaintiff has not plead an unfair competition, misappropriation, or other similar claim and this allegation is not relevant to the tortious interference cause of action. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S.Ct. 1773, 1780 (2017) (internal quotations omitted) (explaining to exercise specific jurisdiction, "the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the *forum*."). Plaintiff also alleges that Defendant spread false rumors about the safety of the DOPS product to members of the MEWPs industry, including those who happen to do business in Texas, but as explained above, has alleged no details indicating Defendant or its representatives intentionally reached into Texas to make the allegedly false statements. Thus, Plaintiff has not met its burden to show Defendant engaged in any intentional conduct in Texas which is related to or gives rise to a tortious interference claim. *See id*. at 1781 (quotations omitted) ("[T]here must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State. When there is no such

connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."). Because the Court lacks personal jurisdiction over Defendant with respect to Plaintiff's claims in this case, the Court recommends Defendant's Motion to Dismiss under Rule 12(b)(2) be granted.[3]

### III. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Assuming Plaintiff had or can meet its burden to demonstrate a prima facie evidence of Defendant's sufficient minimum contacts with Texas to support the exercise of personal jurisdiction, the Court notes that Defendant's Motion to Dismiss under Rule 12(b)(6) also should be granted with respect to Plaintiff's tortious interference claims.[4]

**A. Rule 12(b)(6) Standards**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

---

[3] Defendant has also moved to dismiss under Rule 12(b)(3), arguing venue is not proper in the Southern District of Texas. Under 28 U.S.C. § 1441(a), venue is proper in removal cases in the district court encompassing the court where the state action was pending. Plaintiff filed suit in the 295th Judicial Court of Harris County, Texas and Defendant removed the case to the Southern District of Texas, the district court encompassing the 295th Judicial Court of Harris County. ECF No. 1 at 1. Thus, if the Court had personal jurisdiction over Defendant in this case, venue would also be proper, and the Court would recommend denying Defendant's Rule 12(b)(3) Motion to Dismiss.

[4] Defendant also moved under Rule 12(b)(6) to dismiss Plaintiff's tortious interference and business disparagement claims based on the statute of limitations. The statute of limitations may support dismissal under Rule 12(b)(6) "where it is evident from the plaintiff's pleadings that the action is barred." *Clean Energy v. Trillium Transportation Fuels, LLC*, 2020 WL 7049143, at *1 (S.D. Tex. Nov. 9, 2020), *adopted by* 2020 WL 7043943 (Nov. 30, 2020) (quotations omitted). Plaintiff's First Amended Complaint does not conclusively establish that the tortious interference and business disparagement claims are barred by the statute of limitations. Thus, these issues would be more appropriately resolved on summary judgment. *See id*. (quoting *HSBC Bank USA, Nat'l Ass'n for Option One Mortg. Loan Tr. 2007-HL1, Asset-Backed Certificates, Series 2007-HL1 v. TFHSP, LLC*, Civil Action No. 4:17-CV-542-ALM-CAN, 2017 WL 8727601, at *5 (E.D. Tex. Dec. 14, 2017)) ("Where a statute of limitations defense raised in a motion to dismiss requires factual determinations and the evidence concerning those determinations is unclear, such an affirmative defense is properly considered at the summary judgment stage, when the parties' arguments can be considered along with competent summary judgment evidence.").

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, the Court does not apply the same presumption to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

**B. Plaintiff has failed to state a claim for tortious interference.**

*Tortious interference with an existing contract.* To prevail on a tortious interference with an existing business relationship claim, Plaintiff must show: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of Plaintiff's damages; and (4) actual damage or loss. *Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016) (citing *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex. 1996)). Plaintiff has failed to allege any existing contract subject to Defendant's alleged interference in this case. Plaintiff argues, instead, that in August 2017, AMECO placed a small "sample" order for 500 DOPS units that was exempt from the OEM approval requirement based on the size of the order. ECF No. 6 ¶ 30. Plaintiff suggests "a relationship was created through purchase of the [DOPS] products while still awaiting [Defendant's] approval of the product for more units." ECF No. 13 at 23. Simply put, Plaintiff has not alleged facts demonstrating a contract that was in existence and with which Defendant interfered. Thus, Plaintiff has failed to state a claim for tortious interference of an existing contract.

*Tortious interference with prospective business relationships.* In order to prevail on a tortious interference with prospective business relationships claim, Plaintiff must show: (1) there was a reasonable probability that Plaintiff would have entered into a business relationship with a third party; (2) Defendant acted with a conscious desire to prevent the relationship from occurring

or knew interference was certain or substantially certain to occur as a result of the conduct; (3) Defendant's conduct was independently tortious; (4) the interference proximately caused Plaintiff's injury; and (5) Plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (citations omitted). As explained by the Texas Supreme Court

> to recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct was independently tortious or wrongful. By independently tortious we do not mean that the plaintiff must be able to prove an independent tort. Rather, we mean only that the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort.

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

Plaintiff alleges it was "prepared" to enter into contracts with various companies, including Texas companies, and that Defendant "set out on a course of conduct to intentionally interfere with" these relationships by "improperly refusing to issue the OEM approval letter for use of the [DOPS] product on [Defendant's equipment] . . . despite telling [Plaintiff] its product was safe and the approval letter was written and would be forthcoming." ECF No. 6 ¶ 59. Plaintiff alleges Defendant's actions caused potential customers to abandon contract negotiations, causing lost revenue and opportunity to Plaintiff. *Id*. ¶ 63. However, Plaintiff's allegations that he lost potential sales and contracts as a result of Defendant's interference overlooks the fact that Plaintiff's customers and potential customers could not *use* and, therefore, presumably would not buy, Plaintiff's DOPS absent approval from Defendant for use of the DOPS on equipment for which Defendant was the OEM. Unless Defendant owed a duty to approve the use of DOPS on its OEM, it's failure to approve the use is not independently tortious. Plaintiff has failed to demonstrate that Defendant owed any duty to grant such approval.

Although Plaintiff's Amended Complaint fails to identify any duties owed by Defendant, Plaintiff argues in response to the Motion to Dismiss that Defendant owed three duties to Plaintiff:

1. Defendant owed a duty to respond to Plaintiff's and Plaintiff's potential customers' requests for approval because Defendant indicated the approval was forthcoming and it is "[a] well-established tenet of tort law . . . that one who voluntarily elects to make a partial disclosure is deemed to have assumed a duty to tell the whole truth, i.e., to make full disclosure, even though the speaker was under no duty to make the partial disclosure in the first place." ECF No. 13 at 27 (quoting *Union Pac. Res. Group, Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001)).

2. Defendant owed a duty to respond to Plaintiff's and Plaintiff's potential customers' requests for approval because the ANSI standards "impose a duty on [OEMs] of [MEWPs] to respond to requests for information about modifications to their products." *Id*. at 28-31.

3. Defendant owed a duty to complete the approval process once it conducted a safety review of DOPS because "[o]ne who voluntarily takes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby." *Id*. at 31 (quoting *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013)).

Plaintiff's arguments are unpersuasive and are incorrect statements of the law as applied to the allegations in this case. The first alleged duty is a duty owed in the context of fraud claims, which Plaintiff has not alleged. The second alleged duty consists of a conclusory, unsupported argument that the ANSI and other safety standards imposed a duty to respond to customers or approve the use of DOPS because it was a request for information about product modification. Clearly, any such duty applies only to modifications to products made by the OEM, something that is not relevant in this case. The third alleged duty, applicable in negligence cases, has no application here because Plaintiff alleges intentional conduct by Defendant and Plaintiff does not allege Defendant caused injury to Plaintiff's potential customers' person or property by failing to approve the product. Plaintiff has failed to demonstrate that the alleged interference— Defendant's refusal or failure to approve the use of DOPS with its equipment—was wrongful or in violation of any

12

duty owed to Plaintiff. Therefore, Plaintiff has failed to state a claim for tortious interference with prospective business relationships.

## VI. Conclusion and Recommendation

For the reasons stated above, the Court **RECOMMENDS** that Defendant's Motion (ECF No. 10) be **GRANTED** and Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE**. The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on June 21, 2021 at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge